UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRACY MOSS, INDIVIDUALLY AND AS A REMAINDERMAN OF THE GOLDIE B. MOSS IRREVOCABLE TRUST,

Plaintiff,

– *against* –

IVEN TAUB, ESQ., TRUSTEE OF THE GOLDIE B. MOSS IRREVOCABLE TRUST,

Defendant.

**OPINION & ORDER**

25-cv-03592 (ER)

RAMOS, D.J.:

Tracy Moss, a remainderman of the Goldie B. Moss Irrevocable Trust (the "Trust"), brings this action against Iven Taub, Trustee of the Trust, for allegedly mismanaging the Trust's assets, failing to adhere to the purposes of the Trust, improperly and unfairly discriminating against Moss, and misrepresenting and omitting information in connection with the Trust. Specifically, the complaint[1] asserts three claims: (1) breach of fiduciary duties, (2) breach of the covenant of good faith and fair dealing, and (3) negligent misrepresentation.

Before the Court is Taub's motion to dismiss the complaint, arguing that the Court lacks subject matter jurisdiction pursuant to the probate exception to federal jurisdiction. Doc. 40. For the reasons set forth below, the motion is denied.

[1] Unless otherwise noted, citations to "¶ _" refer to the complaint, Doc. 1.

# I. BACKGROUND

## A. Factual Background

The following facts are based on allegations in the complaint, which the Court accepts as true for purposes of the instant motion. *See, e.g.*, *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Goldie Moss ("Goldie") is the mother of Tracy Moss and Cynthia Moss ("Cindy"). Doc. 40-4 at 7. Moss and Cindy are the only two remaindermen of the Trust. ¶¶ 2–3. Cindy filed an application with New York County Supreme Court, seeking the appointment of a guardian for Goldie and her property because Cindy believed that Goldie was incapacitated. Doc. 40-4 at 6. Proceedings in connection with Cindy's application began on March 26, 2015. Doc. 40-3 at 2. The application was resolved by way of an out-of-court Stipulation of Settlement and Order ("Stipulation") on April 29, 2015. *Id.*; Doc. 40-2 at 40–50. In relevant part, the Stipulation states that Goldie Moss shall: "settle an Irrevocable Trust, with all income of the Trust available for the use and benefit of GOLDIE MOSS, and the Trustee and Successor Trustee of said Trust is to be selected by the Court from the Part 36 list of Qualified appointees …" Doc. 1-2 at 3 (Exhibit B (Stipulation)). The Stipulation describes the assets of the Trust as follows:

> (a) 100% of Shares of the Cooperative Apartment located in Tel Aviv, Israel;
>
> (b) 100% Shares of the Cooperative Apartment located at 400 East 56th [S]treet, 11 N, New York, NY;
>
> (c) 60% Shares of CTG Realty Corporation;
>
> (d) 100% Shares of Anthony's Overhead Doors, Inc.;
>
> (e) All accounts held with financial institutions in the name of Goldie B. Moss, subject to the limitations described herein at paragraph 6;
>
> (f) All reimbursable fees by Counsel retained for Goldie Moss, subject to accountings to be presented to the Trustee;
>
> (g) All remainder funds held by the 1031 Qualified Exchange, unused in the purchase of 1031 properties;

> (h) Title or beneficial interest in the Properties purchased through the 1031 Qualified Exchange; and
>
> (i) All escrowed funds held by Robinson, Brog, et. al., to be released to the Trust by Court Order.

Doc. 1-2 at 4–5. Taub entered into an agreement to serve as the Trustee of the Trust (the "Trust Creating Agreement") on June 2, 2015.[2] ¶ 1. Moss and Cindy are signatories to the Trust Creating Agreement, along with Moss' attorney, Michael C. Barrows, Esq., Cindy's attorney, Julie Stoil Fernandez, Esq., and Goldie's attorney, Bronwyn M. Black Esq. Doc. 1-1 at 5–6; Doc. 1-2 at 2. The terms of the Stipulation are incorporated into the Trust Creating Agreement. ¶¶ 4, 12. In relevant part, the Trust Creating Agreement states that:

> AGREEMENT made as of the 29th day of May, 2015, between GOLDIE B. MOSS a/k/a GOLDITO B. MOSS presently residing at 400 East 56th Street, Apt. 11N, New York, New York 10022, as "Settlor", and IVEN R. TAUB, with offices presently at 355 Lexington Avenue, 20th Floor, New York, New York 10017, as "Trustee" or "Trustees", and pursuant to the Order of the Supreme Court of the State of New York, County of New York dated April 29, 2015, and the attached Stipulation dated April 29, 2015, the terms of which are incorporated herein.

Doc. 1-1 at 2. The Trust was created for Goldie's use and benefit, and it was to terminate upon Goldie's death. Doc. 40-4 at 6–7. Upon the termination of the Trust, the Trustee was directed to "assign, transfer, and pay over the then principal of the Trust in accordance with Goldie's Will," as well as to set aside any Trust principal not otherwise disposed of in equal shares, per stirpes, for the benefit of Moss and Cindy. *Id.* at 7. Any portions set aside for Moss and Cindy were to be paid to each of them, outright. *Id.* In relevant part, the Stipulation states:

> The Irrevocable Trust shall include a provision that upon Goldie's demise, the trust shall terminate and the remaindermen of said Trust – Tracy Moss and Cindy Moss, shall each be entitled to an equal distribution from Trust assets, subject to a reduction …, or if either

---

[2] Goldie executed and notarized the Trust Creating Agreement on May 29, 2015, and Taub did so on June 2, 2015. *See* Doc. 1-1 at 8.

> should predecease Goldie Moss, then to that remainderman's heirs, per stirpes.

Doc. 1-2 at 3. The Stipulation also outlines how distributions from the Trust are to be made to Moss and Cindy during Goldie's lifetime as follows:

> No gifts shall issue by GOLDIE MOSS and/or her TRUSTEE to either TRACY MOSS and/or any member of her family or CINDY MOSS and/or any member of her family from the date of this Stipulation moving forward, except at the discretion of the TRUSTEE, who shall be required to make any gifts per capita to each daughter and her respective family members, if any gifts are made.

*Id.* at 7–8. The estimated net worth of the Trust when it was formed was $15,000,000. ¶ 5.

Goldie passed away on May 4, 2025. Doc. 43-5 at 2. Prior to that date, Taub wrote to Moss, indicating that the Trust was running out of liquid assets.[3] Doc. 40-4 at 7. Given the estimated net worth, as well as the substantial annual net cash flow into the Trust, Moss believed that the Trust should not have been low on cash.[4] ¶ 5. After receiving a demand from Moss' attorney, in January 2025 Taub provided Moss with "most, but less than all," informal accountings and "most, but not all" federal returns "for each year," which the complaint asserts are "from at least 2018 until [the filing of the complaint on April 30, 2025]." ¶ 16. Upon review of the accounting documents and other records, Moss determined that Taub had mismanaged the Trust and did not act in accordance with the "spirit" of the Trust Creating Agreement. ¶ 17.

Moss also alleges that Taub failed to treat her "properly" and failed to act and report in the manner required by the Trust Creating Agreement. ¶¶ 10–11. For example,

---

[3] The parties do not provide a date for this communication from Taub to Moss, but the declaration in opposition to the instant motion includes an email from Taub, dated October 17, 2024, with the language "[l]iquid assets in Mom's name are de minim[i]s." Doc. 43-2 at 2. This email was sent in response to Moss asking for a list of assets remaining in Goldie's estate. *Id.*

[4] There is a dispute as to the current value of the Trust. During a Court conference held on December 4, 2025, Moss asserted that she did not know how much the Trust was worth, but she estimated that "it's at least … 5 million to 10 million." Doc. 43-1 at 22 (Exhibit C (Conference Transcript)). Taub disagreed with that figure but did not provide an estimate for the value of the Trust. *Id.*

Moss alleges that Taub failed to distribute Trust assets, revenues, and disbursements, and did not adequately report these figures to her, despite knowing her personal and family circumstances and ongoing medical and living expenses. ¶ 13. Specifically, Moss is the mother of two minor children with special needs, and her husband is unable to work due to a disabling illness. ¶ 20. Although Moss has tried to support herself and her family by operating a dog grooming business, she has struggled for years under the burden of her family's medical and other costs of living. *Id.*

Moss also alleges that Taub discriminated against her by favoring Cindy—for example, by withholding funds from Moss while making payments to Cindy, in violation of the Stipulation requiring equal distributions from the Trust to both. ¶¶ 20, 23. Cindy—but not Moss—had access to an unmonitored bank account into which certain third-party payments for Goldie, including Social Security benefits, were deposited. ¶ 22. Taub also lacked access to this account, and Moss was not provided with any reports regarding the account. *Id.* Separately, Moss claims that Taub treated her unfairly and intimidated her by telling her, around the time of the creation of the Trust, that he would be her "worst nightmare." ¶ 25.

Moss also alleges that Taub may not have timely transferred into the Trust substantial assets which were listed and identified in paragraph 6 of the Stipulation. ¶ 22. Moss alleges that title to these assets appears to have remained partially or completely outside the Trust which may result in the loss of value to the assets due to unnecessary estate taxes, including certain bank account deposits. *Id*.

Moss adds that Taub also failed to provide formal accounting as mandated by "the stated and intended purposes of the Trust." ¶ 18. She asserts that a formal accounting is necessary to recover from Taub any "overpayments to himself or others, any mismanagement of the Trust assets, and payment to [her] of any moneys that should have been paid to [her]," pursuant to the terms set forth in the Trust. ¶ 5. Moss also asserts

that Taub made material misrepresentations and omissions[5] to her, in connection with Trust assets, commissions, and distributions, which she had a right to receive. ¶ 28.

### B. Procedural History

Moss commenced this action on April 30, 2025, alleging breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and negligent misrepresentation by Taub. Doc. 1. Moss seeks a formal accounting of the Trust, an award of $5,000,000 in her favor, and treble damages in an amount of no less than $15,000,000, as well as costs and attorney's fees. Doc. 1 at 7. Taub filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure12(b)(1) on December 23, 2025, arguing that the Court lacks subject matter jurisdiction pursuant to the probate exception to federal diversity jurisdiction. Doc. 40 at 1.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Pursuant to Rule 12(b)(1), the Court must dismiss a case for lack of subject matter jurisdiction if the Court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The party asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). When determining if a federal court has subject matter jurisdiction and standing is challenged on the basis of the pleadings, the Court "accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Connecticut v. Physicians Health Services of Connecticut, Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (citation omitted). The Court, however, does not presume the truthfulness of the

[5] Moss does not describe Taub's alleged "material misrepresentations and omissions." ¶ 28.

complaint's jurisdictional allegations, *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2005). When evaluating a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues. *Zappia Middle East Construction Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). However, the Court should refrain from drawing inferences in favor of the party asserting subject matter jurisdiction on a Rule 12(b)(1) motion. *People United for Children, Inc. v. City of New York*, 108 F. Supp. 2d 275, 283 (S.D.N.Y. 2000) (citing *Atlantic Mutual Insurance Co. v. Balfour Maclaine International Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

**B. The Probate Exception to Federal Diversity Jurisdiction**

The probate exception "is a judicially created doctrine that proscribes federal courts from hearing probate matters, even if subject-matter jurisdiction would otherwise lie." *Woitovich v. Schoenfeld*, No. 22 Civ. 1742 (JMF), 2022 WL 17979571, at *2 (S.D.N.Y. Dec. 28, 2022) (internal quotation marks omitted). It "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate[, and] also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* (alternations in original) (citing *Marshall v. Marshall*, 547 U.S. 293, 296 (2006)). This includes claims involving trusts in the custody of a state probate court. *Id.* (holding that the probate exception does apply to trusts).

A two-part inquiry is used to determine whether the probate exception to federal diversity jurisdiction applies. *Lefkowitz v. Bank of New York*, 528 F.3d 102, 105 (2d Cir. 2007). Plaintiff must seek neither (1) to probate a will, administer an estate, or do "any other *purely* probate matter, nor (2) to reach a res in the custody of a state court." *Id.* at 106 (emphasis in original) (citation and internal quotation marks omitted); *see also Marcus v. Quattrochi*, 715 F. Supp. 2d 524, 532 (S.D.N.Y. 2010) (describing the Second Circuit's refined two-part inquiry in *Lefkowitz* to determine whether a case falls within

the probate exception to diversity jurisdiction). The first step of the inquiry is "rarely, if ever violated," because few practitioners "would be so misdirected as to seek, for example, letters testamentary or letters of administration from a federal judge." *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002).

To determine whether property is in the custody of the state court, courts examine whether the state court has taken "affirmative action" regarding the property. *See Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 254 (S.D.N.Y 2006). Courts have declined to apply the probate exception to claims where no state court has asserted jurisdiction over the property. *See, e.g.*, *Cadwell v. Citibank, N.A.*, No. 23 Civ. 1315 (GHW) (KHP), 2023 WL 9492396, at *5–7 (S.D.N.Y. Dec. 26, 2023) (determining that the probate exception does not apply when neither a probate court nor any other court has exercised jurisdiction over the trusts).

## III. DISCUSSION

### A. The Motion is Timely

Moss argues that Taub's motion is untimely because Taub did not assert the defense of lack of subject matter jurisdiction until after he filed the answer. Doc. 44 at 6–7. However, lack of subject matter jurisdiction is an issue that "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). Moreover, in Taub's answer, he asserted lack of subject matter jurisdiction as an affirmative defense. Doc. 23 at 7. Even if he had not done so, "[s]ubject-matter jurisdiction can never be waived or forfeited."[6] *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Accordingly, Taub's motion is timely.

---

[6] Moss is a citizen of Florida, Taub is a citizen of New York, and the amount in controversy exceeds $75,000, so there is federal diversity jurisdiction. 28 U.S.C § 1332; ¶¶ 6, A.

**B. The Probate Exception Does Not Apply**

Taub argues that Moss' claims are barred by the probate exception to federal diversity jurisdiction. Taub relies on *Woitovich* to demonstrate that Moss' claims are barred by the probate exception. In *Woitovich*¸ the plaintiff brought action against her maternal aunt, who was a trustee of a trust created by the plaintiff's grandmother's will, for allegedly refusing to give the plaintiff assets left to her in the trust. *Woitovich*, 2022 WL 17979571, at *1. The will at issue was probated in Nassau County Surrogate's Court, and that court issued letters of trusteeship to the plaintiff and the defendant. *Id.* The defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), on the basis that the plaintiff's claims were barred by the probate exception. *Id.* at *1–2. The court examined the plaintiff's six claims, all of which sought distributions from the trust, or an accounting of the trust's assets, and one of which asked the court to continually monitor the trust. *Id.* at *3.

While courts rarely find that the first prong of the probate exception inquiry is violated, in *Woitovich*, the court found that the plaintiff's claim asking the court to monitor the defendant's management of the trust failed at the first stage of the inquiry. *Id*. There, the plaintiff was asking the court to "monitor management of the [t]rust and to instruct [the plaintiff] 'on the correct course of action.'" *Id.* The *Woitovich* court found that the plaintiff was asking the court to "step into the shoes of the probate court and administer the [t]rust." *Id.* Therefore, the relief sought by those requests were "purely probate in nature," and barred by the probate exception. *Id.* (quoting *Lefkowitz*, 528 F.3d at 105).

The court then determined that the plaintiff's other claims, for distribution and accounting, failed at the second step of the probate exception inquiry because they related to the "distribution of funds from a trust created by the will and still under the control of the Surrogate." *Id.* at *4 (citation omitted). Granting relief to the plaintiff "would require the [c]ourt to both directly interfere in the administration of the estate and exercise

jurisdiction over property in the custody of the state court." *Id.* (quoting *Mercer v. Mercer*, No. 13 Civ. 5686 (SJF) (WDW), 2014 WL 3654667, at *8 (E.D.N.Y. May 22, 2014)).

The plaintiff in *Woitovich* argued that the trust at issue was no longer in the custody of a state probate court because all the Surrogate's Court had done was appoint the trustees, and there were no proceedings relating to the trust pending. *Id.* However, the court determined that the trust remained under the Surrogate's Court's jurisdiction because it appointed the trustees, and could do more. *Id.* The court also confirmed that administrators appointed by a state court are officers of that court, the administrator's possession of a decedent's property is taken in obedience to the orders of the court, and the property is a possession which cannot be disturbed by any other court. *Id.* (quoting *Byers v. McAuley*, 149 U.S. 608, 615 (1893)). The court also looked at the power given to the Surrogate's Court regarding testamentary trusts to determine that the trust remained in the custody of the Surrogate's Court. *Id*. (citations omitted).

Here, Moss' claims do not violate the first prong of the inquiry. Moss requests an award of $5,000,000, treble damages of not less than $15,000,000, costs and attorney fees, and a formal accounting. ¶ A–D. The requests do not violate the first prong because she does not ask the Court to monitor the management of the Trust and does not ask for the Court to probate Goldie's will or administer her estate. *See Lefkowitz*, 528 F.3d at 106.

At to the second prong, Taub argues that because he was appointed as Trustee and administrator of Goldie's property, he is an officer of the New York County Supreme Court, and that this Court should not "assume jurisdiction … as to do so would 'disturb' the state court's jurisdiction." Doc. 40-4 at 14. (citing to *Woitovich,* 2022 WL 17979571, at *4 (quoting *Byers*, 149 U.S. at 615)). Taub also argues that although Goldie's will has not been submitted to probate, it will likely have to be submitted, and he has a right to file

a final accounting with the Surrogate's Court, although he has not done so yet. Doc. 43-1 at 6, 16.

Moss, on the other hand, argues that there is "no property in any court that is at issue," she and Cindy are not contemplating a state court proceeding, and no probate has been filed. Doc. 44 at 5–7. Moss also asserts that Taub has represented that there is no will, so there is no will that has to be probated. *Id.* at 5.

The *Abercrombie* case is illustrative here. In *Abercrombie*, the plaintiff filed a complaint in the New York State Supreme Court, alleging that the defendant had obtained an invalid deed to the remainder interest of the plaintiff's residence. 438 F. Supp. 2d at 246. The case was removed to the district court. *Id.* The defendant filed a motion to dismiss for failure to state a claim and alleging that the statute of limitations had expired, but the plaintiff passed away after the motion was filed. *See id.* at 246, 248. The plaintiff's niece was appointed administratrix of the decedent's estate and substituted as the plaintiff in the district court action. *Id.* at 248–49. A dispute regarding the validity of the original plaintiff's will ensued in the Surrogate's Court between the administratrix and the defendant. *Id.* at 249. After the issue with the will arose, the administratrix filed a motion to dismiss the district court action on the ground that the probate exception applied. *Id.* at 250.

In determining that the probate exception did not apply to the district court action, the *Abercrombie* court discussed the process by which state courts take custody of property. *Id.* at 253–54. The plaintiff claimed that, pursuant to *Byers v. McAuley*, 149 U.S. 608 (1893), "the possession of a decedent's property by the administrator appointed in state court 'is a possession taken in obedience to the orders of [the state] court; [and the property] is the possession of the court, and it is a possession which cannot be disturbed by another court.'" *Id.* at 253. The plaintiff also claimed that because she had been appointed administratrix by the Surrogate's Court, the original plaintiff's estate, as

well as the remainder interest of the original plaintiff's residence, was in the possession of the state court. *Id.*

However, the *Abercrombie* court determined that the administratrix's reliance on *Byers* was misplaced because "the state court [in *Byers*] had already carried out a good portion of the administration of the estate, and the jurisdiction exercised by the federal circuit court interrupted that administration." *Id*. at 254 (quoting *Byers*, 149 U.S. at 612, 620). The court asserted that "affirmative action [by the state court] … appear[ed] to be an element of control," and the record in *Abercrombie* did not have any evidence that the Surrogate's Court had taken any affirmative action regarding the property. *Id.* (citing *in re Thomas & Agnes Carvel Foundation*, 36 F. Supp. 2d 144, 150 (S.D.N.Y. 1999) ("The Surrogate's Court clearly has taken control of the property subject to this claim for injunctive relief by restraining its transfer or encumbrance.")). The court also determined that there was nothing to show that the property was a part of the estate until the court declared the deed at issue invalid. *Id*. Therefore, the court determined that the property was not under the control of a state court, and the probate exception did not apply. *Id.* at 255.

Here, although the parties dispute whether the probate exception applies, the parties agree that there are currently no probate proceedings in which the Court would interfere because the will has not been submitted to probate, and no final accounting was filed with a probate court. Doc. 43-1 at 6, 16; Doc. 44 at 4–5.

Taub relies on *Byers* to argue that because he was appointed as a Trustee by a state court, he is an officer of that court, who took possession of property pursuant to an order by the state court, and the jurisdiction of the state court should not be disrupted. Doc. 40-4 at 14 (citing to *Woitovich,* 2022 WL 17979571, at *4 (quoting *Byers*, 149 U.S. at 615)). However, similarly to the plaintiff in *Abercrombie*, Taub's reliance on *Byers* is misplaced. *See* 438 F. Supp. 2d at 254. Although the *Woitovich* court discusses *Byers* to demonstrate why the trust remained in the Surrogate's Court, 2022 WL 17979571, at *4,

the instant case is distinguishable because here there is a Trust whose property is in possession of the Trustee, rather than in possession of a state court. Doc. 40-4 at 14. Also, the *Woitovich* court emphasized the power of the Surrogate's Court over testamentary trusts, 2022 WL 17979571, at *4, and here there is not a testamentary trust, but an irrevocable lifetime trust. Finally, the Surrogate's Court has never exercised jurisdiction over the Trust: Taub was not appointed by the Surrogate's Court, and no proceedings in connection with the Trust have occurred in the Surrogate's Court. Doc. 40-4 at 14; Doc. 44 at 4. This is unlike the trust in *Woitovich*, which was created by a will that was probated in the Surrogate's Court, and trusteeship was issued by the Surrogate's Court. *Woitovich*, 2022 WL 17979571, at *1.

Also like the plaintiff in *Abercrombie*, Taub's reliance on *Byers* is misplaced because here, unlike in *Byers*, no state court has carried out administration of the Trust, so there is no administration to interrupt. *See Abercrombie*, 438 F. Supp. 2d at 254. Also here, like in *Abercrombie*, no state court has taken "affirmative action" regarding the Trust, so no state court has exercised jurisdiction over the Trust. *See id*. Therefore, the Trust is not *res* in the custody of state court, and Moss does not seek to reach *res* in the custody of state court. The probate exception does not apply.

In further support of this Court's jurisdiction over the matter, Moss' claims are like those in *Abercrombie*, in that they allege tortious action. Moss asserts claims for breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and negligent misrepresentation. *See* ¶¶ 12, 17, 31. Thus, in both cases "the lawsuit at least in part sounds in tort and therefore is precisely the type of action that routinely is found to be outside the bounds of the probate exception." *Abercrombie*, 438 F. Supp. 2d at 255 (citing *Giardina v. Fontana*, 733 F.2d 1047, 1050–51 (2d Cir. 1984)).

## IV. CONCLUSION

For the foregoing reasons, Taub's 12(b)(1) motion to dismiss pursuant to the probate exception to federal diversity jurisdiction is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 40.

It is SO ORDERED.

Dated: August 25, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.